95 P.3d 777 (2004)
David KOENIG, Respondent,
v.
CITY OF DES MOINES and Des Moines Police Department, Appellants.
David Koenig, Appellant,
v.
City of Des Moines and Des Moines Police Department, Respondents.
Nos. 49656-5-I, 49693-0-I, 51918-2-I.[]
Court of Appeals of Washington, Division 1.
July 19, 2004.
As Amended August 18, 2004.
*778 Michael John Killeen, Eric B. Martin, Seattle, WA, for Amicus Curiae  Allied Daily Newspaper and Washington Newspapers Publishers.
Sara Lyle Ainsworth, Northwest Women's Law Center, Seattle, WA, for Amicus Curiae  Northwest Women's Law Center.
Douglas B. Klunder, Attorney at Law, Seattle, WA, for Amicus Curiae  American Civil Liberties.
William Berggren Collins, Olympia, WA, for Amicus Curiae  Office of the WA St. Atty. Gen.
Pamela Beth Loginsky, Wash. Assoc. Pros. Atty., Olympia, WA, for Amicus Curiae  Washington Assoc. Pros. Atty.
Catherine Carroll, Attorney at Law, Olympia, WA, for Amicus Curiae  Washington State Coalition of Sexual Assault Programs.
Linda Anne Marousek, City of Des Moines, Des Moines, WA, for Appellants City of Des Moines and Des Moines Police Dept.
Owen Sherman Limstrom, Attorney at Law, Tacoma, WA, William John Crittenden, Attorney at Law, Seattle, WA, for Respondent David Koenig.
GROSSE, J.
Highly offensive information that, if disclosed, would harm the efficient administration of government more than it would benefit the public interest is not of legitimate concern to the public. Where such information *779 is contained in police investigative records, it must be redacted before the records are disclosed under the public records provisions of the public disclosure act, the Fair Campaign Practices Act.

FACTS
David Koenig is the father of "Jane," a child victim of sexual assault. In October 1996, Koenig requested all records from the City of Des Moines and its police department (collectively, the city) related to Jane's case under RCW 42.17.250 through.348 (the public records act, or the Act). The city denied Koenig's request, broadly identifying RCW 42.17.310 as the statutory authority for nondisclosure. Between 1997 and 1999, Koenig made several more written requests for the records, identifying Jane by name in each request. The city continued to refuse these requests, citing provisions in the Act that exempt from disclosure certain investigative records and identifying information.
On December 15, 1999, Koenig sued the city to compel disclosure of the records. The city obtained an injunction prohibiting disclosure of the records while Koenig's case was pending. Following trial and an in camera review of the records, the trial court issued a memorandum opinion and order to disclose redacted records to Koenig. The redacted content included Jane's name, address, and her relationship with the assailant. But the details about the sexual assaults against Jane, including where on her body she was touched and the manner in which she was touched, were not redacted from the records. In addition to awarding access to the records, the trial court also awarded attorney fees and costs to Koenig, although it denied Koenig's request for statutory penalties against the city.
Koenig later moved to vacate the judgment based on fraud, namely the city's purported failure to disclose a witness statement. Koenig also moved the trial court to recuse itself for communicating ex parte with the city. The trial court denied both motions.
The city appeals both the order releasing the redacted records, and the order awarding Koenig attorney fees. Koenig cross-appeals the trial court's denial of statutory penalties against the city. Furthermore, Koenig has moved to dismiss the city's appeal as moot. In a linked case, Koenig appeals the trial court's denial of his CR 60 motion and his motion to recuse.

DECISION

A. Koenig's Motion to Dismiss
Preliminarily, we address Koenig's motion to dismiss the city's appeal as moot, which he bases on the fact that the city released the requested records to him over two years ago, and his assertion that the city's appeal only seeks to prevent the disclosure of those records.
A case is moot only when a court cannot provide meaningful relief.[1] This case is not moot because we can provide the city with meaningful relief from both of the errors it claims. First, a decision in the city's favor on the records disclosure issue would require that we reverse Koenig's attorney fee award. Second, a decision in the city's favor on the issue of attorney fee calculation would require that we remand the matter to the trial court. Consequently, the city's appeal is not moot and we deny Koenig's motion to dismiss.

B. The City's Appeal
The city claims that the trial court erred by misconstruing the public records act to require disclosure of the redacted records. It also claims that the trial court awarded an excessive amount of attorney fees to Koenig.

1. Disclosure of records pertaining to Jane's assault
The city argues that one or more provisions in the Act exempted the entire contents of the records from disclosure, and therefore the trial court erred when it ordered disclosure of redacted records. This assignment of error requires that we consider three specific provisions in the Act, each of which exempts certain kinds of information from disclosure: RCW 42.17.31901, which exempts information *780 revealing the identity of child victims of sexual assault; RCW 42.17.310(1)(e), which exempts information revealing the identity of crime victims, witnesses, or complainants if disclosure would endanger any person's life, physical safety, or property, or if the victim, witness or complainant requests nondisclosure; and RCW 42.17.310(1)(d), which exempts police investigative records, the nondisclosure of which is essential to effective law enforcement or for the protection of any persons' right to privacy.
But before we examine these provisions and the city's related arguments, we briefly review the public policy of the public records act, for it is this policy, as expressed in the text of the Act and the case law interpreting it, that must guide our review.[2]

a. Policy of the Public Records Act
More than thirty years ago, the sovereign people of Washington declared it to be the public policy of our state:
That, mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.[3]
To implement this policy, the Act's paramount provision mandates that each agency "make available for public inspection and copying all public records, unless the record falls within the specific exemptions of subsection (6) of this section, RCW 42.17.310, 42.17.315, or other statute which exempts or prohibits disclosure of specific information or records."[4]
Washington courts have consistently observed that "the Act is a `strongly worded mandate for broad disclosure of public records.'"[5] Further, "[t]he provisions of the Act are to be liberally construed to promote full access to public records so as to assure continuing public confidence in governmental processes, and to assure that the public interest will be fully protected."[6] To emphasize this policy, in 1992 our legislature amended the Act to declare:
The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. The public records subdivision of this chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy.[7]
The Act recognizes that the publics interest in open public records can and often does conflict with its interests in protecting personal privacy and the efficient administration of government.[8] Thus, a number of provisions in the Act exempt certain information and even entire records from disclosure.[9] Nevertheless, these exemptions "are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be *781 deleted from the specific records sought."[10]
With this policy background in mind, we turn to the controversy presented here. On appeal, the city argues that it met its statutory burden to show that the records Koenig requested were exempt from disclosure by RCW 42.17.31901, RCW 42.17.310(1)(d), RCW 42.17.310(1)(e), or some combination of these provisions. We discuss each in turn.

b. RCW 42.17.31901
RCW 42.17.31901 provides:
Information revealing the identity of child victims of sexual assault who are under age eighteen is confidential and not subject to public disclosure. Identifying information means the child victim's name, address, location, photograph, and in cases in which the child victim is a relative or stepchild of the alleged perpetrator, identification of the relationship between the child and the alleged perpetrator.
The city argues that RCW 42.17.31901 prohibits disclosure of the requested records because Koenig identified Jane by name in his requests. The city reasons that if redacted records are disclosed in response to a request that names a specific child, the act of disclosure itself would identify the child as certainly as if the records contained the child's identifying information. Thus, the city argues, courts should construe RCW 42.17.31901 to exempt from disclosure all records related to a specifically-named child, and not just the identifying information listed in the statute.
Although the logic of the city's argument is persuasive, we cannot construe RCW 42.17.31901 in the manner the city advocates. Neither the plain language of the statute, nor any reasonable interpretation of its terms requires the exemption of entire records simply because a request names a specific child. Rather, the statute exempts specifically defined information from disclosure, and nothing more. Although the city relies on the declaration of intent for RCW 42.17.31901 (which may be found in the notes following RCW 7.69A.020) for the proposition that the legislature intended to limit public disclosure of records of child victims of sexual assault, that declaration indicates that the legislature was concerned only with the release of identifying information, not all information contained in such records.
To be sure, the city does identify a troublesome hypothetical in which a requestor could speculate about the identity of a specific child victim of sexual assault, name the child in a request for records, and then receive confirmation of the child's identity, ironically, in the form of redacted records, which may contain highly offensive and embarrassing information. But even if we were presented with such a scenario, we could not rewrite the statute or construe it in a manner contrary to its unambiguous text. Likewise, we cannot do so here.
Mindful of the legislature's charge to construe the Act's exemptions narrowly, we hold that RCW 42.17.31901 does not exempt from disclosure entire records pertaining to a specifically-named child victim of sexual assault. The trial court's redaction of identifying information from the records and its order to release the redacted records did not violate the requirements of RCW 42.17.31901.

c. RCW 42.17.310(1)(e)
The city also argues that the records are exempt from disclosure under RCW 42.17.310(1)(e) because they contain information revealing the identity of a crime victim, and because Jane indicated a desire for nondisclosure.[11] But this argument also fails.
Like RCW 42.17.31901, RCW 42.17.310(1)(e) only exempts identifying information from disclosure; it does not exempt entire records. In this case, as in other cases involving records pertaining to child *782 victims of sexual assault, RCW 42.17.31901 completely engulfs the relevant provisions of RCW 42.17.310(1)(e) because redaction of identifying information under RCW 42.17.31901 is mandatory, i.e., it does not depend on a finding of endangerment or an indicated desire for nondisclosure. Thus, even if we assume that RCW 42.17.310(1)(e) applies here, the redaction of identifying information under RCW 42.17.31901 also satisfies the requirements of RCW 42.17.310(1)(e).

d. RCW 42.17.310(1)(d)
The city's final argument asserts that the records are exempt from disclosure under RCW 42.17.310(1)(d).[12] Initially, we recognize that the city no longer relies on an argument it made below  that nondisclosure was essential to effective law enforcement. The city now relies only on the "right to privacy" basis for exemption in RCW 42.17.310(1)(d), and consequently that is the only basis we address here. We also recognize that, unlike RCW 42.17.31901 and RCW 42.17.310(1)(e), RCW 42.17.310(1)(d) does contemplate the exemption of entire records as opposed to merely the identifying information. But again, this exemption is inapplicable to the extent that the information implicating personal privacy or vital governmental interests can be deleted from the records sought.[13]
Thus, to clarify, the question presented is whether RCW 42.17.310(1)(d) requires redaction of information, in addition to identifying information, from investigative records pertaining to child victims of sexual assault, the disclosure of which would violate personal privacy. To address this important question adequately, we must consider how the concept of personal privacy has developed within the context of the public records act.
When originally codified, the Act did not define the term "privacy" or similar terms used throughout its text. Thus, the courts undertook as necessary the task of developing and defining the concept of privacy. The first case in which the Supreme Court did so was Hearst Corporation v. Hoppe.[14] In Hearst, the Seattle Post-Intelligencer sought certain records maintained by the King County Assessor.[15] At issue was whether disclosure of the records would violate the taxpayers' right to privacy recognized in RCW 42.17.310(1)(c).[16] The court presumed that, because the Act did not define the "right to privacy," the legislature intended the term to mean what it meant at common law.[17] In the Hearst court's view, the most analogous privacy right at common law was found in the law of torts. The court reasoned that the standard and analysis of privacy in the Restatement (Second) of Torts was "uniquely analogous to the values and interests which subsection [.310(1)(c)] appear[ed] designed to protect."[18] Consequently, the Hearst court adopted the Restatement's rule that a person's right of privacy is invaded if the matter publicized "(a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public."[19] The court did not reach the "legitimate concern" prong of the analysis in Hearst, however, because it found that the information at issue was not of the kind was would be highly offensive to a reasonable person.[20]
Not until 1986 did the Supreme Court substantially refine its analysis in Hearst. In In re Rosier,[21] the court declared that *783 "the information sought need not be highly offensive in order to establish a privacy interest. Rather, ... an individual has a privacy interest whenever information which reveals unique facts about those named is linked to an identifiable individual."[22] The court went on to incorporate Hearst's"highly offensive" test into the second part of a "balancing test under which an agency must determine whether an individual's privacy interest outweighs the public's interest in broad disclosure."[23]
But within a year after In re Rosier, the legislature amended chapter 42.17 RCW to declare that the "right to privacy" (and similar terms used in the chapter) "is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public."[24] The legislature made clear its intent "to restore the law relating to the release of public records largely to that which existed prior to the Washington Supreme Court Decision in `In re Rosier,'" and to define "privacy" as the Court did in Hearst.[25] Furthermore, it appears that the legislature intended that the amendment would diminish or possibly eliminate the discretion an agency could exercise when determining whether to disclose records under the Act:
The intent of this legislation is to make clear that: (1) Absent statutory provisions to the contrary, agencies possessing records should in responding to requests for disclosure not make any distinctions in releasing or not releasing records based upon the identity of the person or agency which requested the records, and (2) agencies having public records should rely only upon statutory exemptions or prohibitions for refusal to provide public records.[26]
Indeed, the Supreme Court recognized that subsection .255 prohibited courts from engaging in the kind of "freewheeling policy judgment"[27] involved in balancing an "individual's privacy interest against the interest of the public in disclosure."[28]
Yet determining whether information was of legitimate concern to the public proved to be no more straightforward than determining whether information implicated the right of privacy. Thus, in Dawson v. Daly, the Supreme Court fashioned another balancing test designed to assist courts, and presumably agencies, in determining whether information is of legitimate public concern.[29]
In Dawson, a county prosecutor sought an injunction to prevent the disclosure of documents contained in a deputy prosecutor's personnel file, including performance evaluations.[30] The trial court denied the injunction, but on direct review, the Supreme Court reversed that decision. The court recognized that RCW 42.17.255 does not allow a balancing of the employee's privacy interest against the public interest, but it went on to hold that RCW 42.17.010(11) contemplates some balancing of the public's interest in disclosure against the public's interest in the "efficient administration of government."[31]
The Dawson court held that the term `legitimate public concern' used in the earlier cases and in RCW 42.17.255 meant `reasonable public concern.' Consequently, requiring disclosure where the public's interest in efficient government could be harmed more than it would be served was unreasonable, and therefore the public had no legitimate concern in the details of a prosecuting attorney's *784 job performance evaluations that did not discuss specific incidents of misconduct.[32] Thus, in Dawson the balance tipped in favor of exempting performance evaluations from disclosure because otherwise (1) "employee morale would be seriously undermined," and (2) supervisors would be "reluctant to give candid evaluations."[33]
Following the Dawson Court's lead, in Brown v. Seattle Public Schools[34] we held that the contents of performance evaluations of employees of public education was not of legitimate public concern, absent discussions of specific instances of misconduct or public job performance. Similarly, in Tiberino v. Spokane County[35] Division Three held that, although the public had a legitimate concern in the fact that a government employee had misused public resources by abusing personal e-mail privileges, the public had no legitimate interest in the content of those e-mails.
We now apply the foregoing principles to the question presented here. At the outset of our analysis, we emphasize that the first prong of the test set forth in RCW 42.17.255 is not at issue here. Koenig does not challenge the trial court's conclusion that the disclosure of details in the records would be highly offensive to a reasonable person. We therefore need only determine whether certain information in the records, such as sexually explicit descriptive information, is of legitimate concern to the public. To answer that question, we must employ the Dawson balancing test of public benefit versus public harm.
With regard to the public's interest in disclosure of the information contained in these records, we recognize that they contain a wealth of detail about the circumstances surrounding the assault, including where, when, and how the assaults occurred, and the methods the perpetrator used to commit the crime. The records also contain details about how promptly the attack was reported to law enforcement, and what resources and methods law enforcement officials used. Disclosure of this information advances the public's interest because it educates members of the public as to how they might prevent other children from falling prey to sexual assaults, and because it allows the public to gauge the overall effectiveness or ineffectiveness of law enforcement's performance.
Regarding the detriment to the "efficient administration of government," however, we recognize that investigative records of sexual assaults on children will contain sexually explicit descriptions about where and in what manner the child was touched. We agree with the city and several amici that disclosure of such sexually explicit descriptive information would have a detrimental effect on the ability of law enforcement to investigate sexual assaults against children. If a member of the public could inspect and copy sexually explicit descriptive information contained in investigative records, we cannot expect but that children would withhold at least the most embarrassing descriptive details or perhaps would decide not to report a crime at all to avoid potential embarrassment.[36]
We expect that this result would be even more likely given that, as we held above, the Act does not exempt records from disclosure where the request identifies a specifically-named child. Disclosing the mere fact that a specifically-named child was a victim of sexual assault may not deter the reporting of such assaults, but enabling a requestor to deduce the identity of a child victim and know the sexually explicit descriptive information in those records likely would have a substantially detrimental effect on the reporting, investigation, and prosecution of these assaults.
*785 Balanced against this detrimental effect, we can foresee only a slight benefit that could result from the disclosure of sexually explicit descriptive information. Such information might relate details about the perpetrator's methods, and give the public an additional basis to gauge the accuracy and thoroughness of law enforcement investigations. But disclosure of this information would do little to "assure continuing public confidence [in] governmental processes, and to assure that the public interest will be fully protected."[37] Weighing the slight benefit to the public's interest versus the substantial harm to the efficient administration of law enforcement, we conclude that the balance tips against disclosure of the sexually explicit descriptive information contained in these records.
Thus, we conclude that the city carried its burden of showing that the sexually explicit descriptive information contained in the records Koenig requested was not of legitimate concern to the public. This information, in addition to Jane's identifying information, should also have been redacted from the records before they were disclosed to Koenig.

2. Koenig's attorney fees at trial
In its other claim of error, the city asserts that the trial court awarded an excessive amount of attorney fees to Koenig. The city argues that, because Koenig originally requested unredacted records and only agreed to accept redacted records on June 20, 2001, he was entitled only to fees he incurred after June 20, 2001. RCW 42.17.340(4) provides that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record... shall be awarded ... reasonable attorney fees, incurred in connection with such legal action." But a proper award of attorney fees relates "only to that which is disclosed and not to any portion of the requested documents found to be exempt."[38]
Although we have held that Koenig was entitled to inspect and copy less information than what the trial court's order allowed, we nevertheless conclude that Koenig was the substantially prevailing party. Even if the trial court had construed the public records act as we do here, Koenig would still have been entitled to inspect and copy most, if not all, of the records he requested. As the prevailing party, Koenig was entitled to reasonable attorney fees from the date on which the requested records were identifiable to the city.[39]
But the order relating to the award of attorney fees apparently did not discount the fees Koenig incurred in seeking disclosure of exempt information. In light of our holding that some content in the requested records was exempt from disclosure, we remand the issue of attorney fees to the trial court, which shall modify its order by reducing the award of attorney fees as appropriate.

C. Koenig's cross-appeal
In addition to attorney fees and costs, RCW 42.17.340(4) provides that it is "within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record." On cross appeal, Koenig claims that the trial court abused its discretion by failing to award him daily penalties against the city for wrongfully refusing to disclose the requested documents.
The trial court concluded that the statute confers on courts the discretion to decline to impose statutory penalties even if an agency wrongfully withholds records from disclosure. When it explained why it declined to impose penalties here, the trial court stated three reasons: first, the city had acted in good faith; second, the city had obtained injunctive relief prohibiting disclosure; and, third, Koenig only partially prevailed in his suit.
*786 On reconsideration, the trial court recognized that the statutory provision for daily penalties could be interpreted to require a court to impose a daily penalty. It did not analyze this issue, however. Rather, the trial court again declined to impose any penalty, and added a fourth reason for doing so: that the case was a close one between competing public policy considerations, openness in public records versus the need to keep private the details of sexual assaults on children.
After the parties submitted their briefs in this appeal, we held in King County v. Sheehan that if a trial court finds that an agency wrongfully withheld a requested record, it must impose a penalty of at least five dollars per day that the agency wrongfully withheld the records.[40] Thus, the trial court here erred by declining to award penalties. We remand this issue to the trial court, which we instruct to determine of the number of days the city should be penalized, and to determine the amount of the daily penalty, within the limits established by the statute.[41]
On remand the trial court may consider a number of factors when determining the amount of the daily penalty, such as whether the agency did or did not act in good faith, or that the case is a close one involving competing public policy considerations. Furthermore, the trial court has discretion to reduce the number of days for which it imposes the penalty, to account for such factors as whether the plaintiff filed suit in a timely manner,[42] and perhaps whether the city did not wrongfully withhold the records during the period that an injunction prohibited the city from disclosing the records.

D. Koenig's linked appeal
In a separate appeal, which this court linked to the main case, Koenig contends that the trial court erred by denying his motion under CR 60(b)(4) to vacate the judgment for fraud. He bases his appeal on the grounds that he presented the unchallenged testimony of two witnesses and an admission of a party opponent to support his motion, and that the city failed to offer any evidence in opposition. Koenig also contends that the trial court erred by denying a motion for recusal.

1. CR 60 motion
Despite Koenig's assertions that he presented clear and convincing evidence of the city's fraud and that the city presented no evidence to refute his motion, it appears that the opposite is true. The trial court's findings of fact and conclusions of law show that Koenig presented only speculation, and not clear and convincing evidence to support his motion.
Furthermore, the city did present competent evidence to oppose Koenig's motion, including a contemporaneous police report showing that the claimed secreted witness statement of September 20, 1996, did not exist. The city also admitted that it mistakenly asserted in a 2000 oral argument that an additional witness statement existed. Finally, the Des Moines City Attorney declared that her office had found no other witness statement dated September 20, 1996, despite an exhaustive search of all files.
The trial court's finding of fact that no additional witness statement existed is supported by the evidence, and Koenig has failed to show that the trial court's denial of the CR 60 motion was manifestly unreasonable, or that it exercised discretion based on untenable grounds or for untenable reasons. Thus, Koenig has failed to show that the trial court abused its discretion by denying the motion.

2. Motion to recuse
In arguing his second claim of error, Koenig reiterates four and one-half pages of text from the motion to recuse he filed with the trial court. He does not, however, show how the trial court clearly abused its discretion by denying that motion. Consequently, Koenig's *787 argument as to this claimed error fails.[43]

CONCLUSION
We vacate the trial court's award of Koenig's attorney fees and remand for modification. On remand the trial court shall also determine and award to Koenig reasonable attorney fees and costs in connection with the successful prosecution of his cross-appeal.[44] We reverse the denial of daily statutory penalties and remand for a determination of both the amount of daily penalties and the number of days for which a penalty should be imposed. Finally, we affirm the orders denying Koenig's CR 60 motion and his motion to recuse.
WE CONCUR: SCHINDLER and AGID, JJ.
NOTES
[] No. 51918-2-I is hereby consolidated under No. 49656-5-I for purposes of disposition.
[1] BBG Group, LLC v. City of Monroe, 96 Wash.App. 517, 521, 982 P.2d 1176 (1999).
[2] See RCW 42.17.340(3) ("Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest.").
[3] RCW 42.17.010(11).
[4] RCW 42.17.260(1). See O'Connor v. Dep't of Social & Health Servs., 143 Wash.2d 895, 905, 25 P.3d 426 (2001) (quoting Progressive Animal Welfare Soc'y v. University of Washington, 125 Wash.2d 243, 250, 884 P.2d 592 (1994)).
[5] Amren v. City of Kalama, 131 Wash.2d 25, 31, 929 P.2d 389 (1997) (quoting Progressive Animal Welfare Soc'y, 125 Wash.2d at 251, 884 P.2d 592); Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978); Spokane Police Guild v. Washington State Liquor Control Bd., 112 Wash.2d 30, 33, 769 P.2d 283 (1989).
[6] Spokane Police Guild, 112 Wash.2d at 33, 769 P.2d 283.
[7] RCW 42.17.251; Amren, 131 Wash.2d at 31, 929 P.2d 389; Progressive Animal Welfare Soc'y, 125 Wash.2d at 251, 884 P.2d 592.
[8] RCW 42.17.010(11).
[9] See, e.g., RCW 42.17.310(1)(a) through (ddd).
[10] RCW 42.17.310(2).
[11] "(1) The following are exempt from public inspection and copying:... "(e) Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies,... if disclosure would endanger any person's life, physical safety, or property. If at the time a complaint is filed the complainant, victim or witness indicates a desire for disclosure or nondisclosure, such desire shall govern." RCW 42.17.310.
[12] RCW 42.17.310(1)(d) provides that the following is exempt from public inspection and copying: "Specific intelligence information and specific investigative records compiled by... law enforcement ... agencies ..., the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy."
[13] RCW 42.17.310(2).
[14] 90 Wash.2d 123, 580 P.2d 246 (1978).
[15] Hearst, 90 Wash.2d at 125, 580 P.2d 246.
[16] Hearst, 90 Wash.2d at 126, 580 P.2d 246.
[17] Hearst, 90 Wash.2d at 135, 580 P.2d 246, citing New York Life Ins. Co. v. Jones, 86 Wash.2d 44, 47, 541 P.2d 989 (1975).
[18] Hearst, 90 Wash.2d at 136, 580 P.2d 246.
[19] Hearst, 90 Wash.2d at 135-36, 580 P.2d 246.
[20] Hearst, 90 Wash.2d at 138, 580 P.2d 246.
[21] In re Rosier, 105 Wash.2d 606, 717 P.2d 1353 (1986).
[22] In re Rosier, 105 Wash.2d at 613, 717 P.2d 1353.
[23] In re Rosier, 105 Wash.2d at 613, 717 P.2d 1353.
[24] RCW 42.17.255 (emphasis added).
[25] Laws of 1987, ch. 403, § 1 at 1546-47.
[26] Laws of 1987, ch. 403, § 1 at 1547.
[27] Brouillet v. Cowles Publ'g Co., 114 Wash.2d 788, 798, 791 P.2d 526 (1990).
[28] Dawson v. Daly, 120 Wash.2d 782, 795, 845 P.2d 995 (1993).
[29] Dawson, 120 Wash.2d at 798-800, 845 P.2d 995.
[30] Dawson, 120 Wash.2d at 787-88, 845 P.2d 995.
[31] Dawson, 120 Wash.2d at 798, 845 P.2d 995.
[32] Dawson, 120 Wash.2d at 797-800, 845 P.2d 995.
[33] Dawson, 120 Wash.2d at 799, 845 P.2d 995.
[34] 71 Wash.App. 613, 619, 860 P.2d 1059 (1993).
[35] 103 Wash.App. 680, 690-91, 13 P.3d 1104 (2000).
[36] Of course, embarrassment alone is not a sufficient reason to exempt information in public records from disclosure. RCW 42.17.340(3) (courts are bound to take into account the Act's policy that free and open examination of public records is in the public interest, even though it may cause embarrassment). But we conclude that embarrassment is nevertheless a proper factor to consider under the Dawson balancing test.
[37] RCW 42.17.010(11).
[38] Limstrom v. Ladenburg, 136 Wash.2d 595, 616, 963 P.2d 869 (1998) (citing Dawson, 120 Wash.2d at 800, 845 P.2d 995).
[39] Limstrom, 136 Wash.2d at 616, 963 P.2d 869.
[40] King County v. Sheehan, 114 Wash.App. 325, 351-52, 57 P.3d 307 (2002).
[41] Sheehan, 114 Wash.App. at 350, 357, 57 P.3d 307.
[42] See Yousoufian v. Office of Ron Sims, 114 Wash.App. 836, 850, 60 P.3d 667 (2003), review granted, 150 Wash.2d 1001, 77 P.3d 651 (2003).
[43] Wolfkill Feed & Fertilizer Corp. v. Martin, 103 Wash.App. 836, 840, 14 P.3d 877 (2000) (recusal lies within the sound discretion of the trial judge, whose decision will not be disturbed absent a clear showing of abuse of that discretion).
[44] RCW 42.17.340(4); RAP 18.1(i).