[No. 31825-3-II. Division Two. May 19, 2005.]

RICHARD LINDEMAN ET AL., *Appellants*, v. KELSO SCHOOL DISTRICT NO. 458, *Respondent*.

*James K. Morgan*, for appellants.

*Clifford D. Foster, Jr.* (of *Dionne & Rorick*), for respondent.

¶1 HUNT, J.— Richard and Ginger Lindeman appeal a trial court's denial of their motion to show cause and its dismissal of their public disclosure act (PDA) claim to require the Kelso School District (District) to produce a redacted version of a school bus surveillance videotape under RCW 42.17.310(2). The tape showed a fight on the school bus involving another student hitting the Lindemans' son. The School District allowed the Lindemans to view the tape, but

it refused to turn over a copy for them to keep, asserting that the District had retained this tape solely for disciplinary purposes; otherwise, it would have been taped over as was the District's normal procedure.

¶2 The Lindemans argue that (1) the tape was not exempt under RCW 42.17.310(1)(a) as "[p]ersonal information in any files maintained for students in public schools"; (2) to the extent it was exempt, the trial court erred when it concluded that the District did not have to provide a redacted version; and (3) they are, therefore, entitled to attorney fees, costs, and terms of $100 per day under the PDA.

¶3 Agreeing with the trial court that the tape was exempt from public disclosure and that the District was not required to provide a redacted copy of the tape, we affirm.

## FACTS

¶4 After their son was involved in an altercation with another student on a school bus, Richard and Ginger Lindeman requested a copy of a school bus surveillance videotape from the Kelso School District.[1] The District had already allowed the Lindemans and the parents of the other child involved to view the videotape on the date of the incident.

¶5 The Lindemans threatened to bring legal proceedings under the PDA and to pursue attorney fees, costs, and terms if the District failed to comply with their request to deliver a copy for their lawyer to review. The District refused to comply with the Lindemans' request, asserting that the videotape, which the school had maintained for disciplinary purposes, was exempt from the PDA under RCW 42.17.310(1)(a) and under the Family Education Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g.

---

[1] The Lindemans also requested other information that is not relevant to this appeal.

¶6 The Lindemans subsequently filed a PDA claim, asking the superior court to order the District to provide the tape, attorney fees, costs, and terms under the PDA. Before the show cause hearing, the Lindemans served the District with a subpoena duces tecum to produce the videotape. Although the District recognized that the Lindemans could obtain the videotape under discovery rules if they brought a tort action, it asserted that it was not required to disclose the videotape under the PDA.[2] The District also asserted that because the tape was not subject to the PDA, the Lindemans were not entitled to attorney fees under the PDA.

¶7 When the Lindemans refused to withdraw their PDA request, the District opposed the show cause motion and moved to quash the subpoena duces tecum, asserting again that the videotape was exempt from the PDA under RCW 42.17.310(1)(a) and FERPA. The District also contended that because of the videotape's format, it could not be

---

[2] The District's counsel discussed this issue in a March 8 letter to the Lindemans' counsel, in which it stated:

> I have received your letter of March 4, 2004[,] and the subpoena duces tecum.
>
> As I believe I indicated in our phone conversation, my statement that I would honor the subpoena duces tecum for the videotape was based on the assumption that you would not pursue a claim for attorney fees. I do not believe that a subpoena for the challenged record resolves the legal issue of whether the tape is subject to disclosure under chapter 42.17 RCW. As I stated, under RCW 42.17.310(1)(a), 34 CFR § 99.31(a)(9), and 34 CFR (sic) § 99.12(a) . . . personally identifiable information may not be released without consent of the parent or adult student involved.
>
> As we further discussed, the District may release such information in response to a valid court order or subpoena if it provides advance notice of the subpoena or court order to the parents of the students involved. Absent a resolution of the question of your fees, I cannot agree to follow this process. The videotape would be discoverable in the event of a tort action, and subject to subpoena in the discovery process. But in your public disclosure proceeding, a subpoena duces tecum for a document otherwise exempt from public disclosure is not discoverable or subject to the subpoena power. I do not believe that you have any basis under chapter 42.17 RCW to have a court enter an order making this document discoverable and thus justify an award of attorney fees.
>
> Accordingly, unless we can enter a stipulation that drops your claim for fees, the District will move to quash the subpoena and defend against the show cause order on March 15th. Please give me a call to discuss this matter.

Clerk's Papers at 35.

edited. The District argued that requiring it to provide the tape in a different format would be tantamount to ordering it to create a new record, which the PDA did not require.

¶8 The Lindemans argued that RCW 42.17.310(1)(a) did not apply and that, even if it did, the District should be required to redact the videotape and to disclose the non-exempt portions. They also argued that the videotape was not protected under FERPA. They further argued that the District's refusal to comply with their subpoena duces tecum, unless they dropped their claim for attorney fees, justified terms of $100 per day for failing to comply with their PDA request.

¶9 Following argument, the trial court found that (1) the District had maintained the videotape for potential discipline and (2) the tape contained information that would allow a viewer to identify a student other than the Lindemans' son. The court declined to address whether FERPA applied, but it concluded that (1) RCW 42.17-.310(1)(a)'s exemption was broader than that of RCW 42-.17.310(1)(b); (2) the District was not required to disclose the videotape under the PDA because it contained personal information maintained for students in public school; (3) the District was not required to edit the videotape under RCW 42.17.340(2); and (4) the Lindemans were not entitled to fees, costs, or terms under the PDA. The trial court dismissed the matter with prejudice and awarded the District costs.

¶10 The Lindemans appeal.

## ANALYSIS

¶11 RCW 42.17.310(1)(a) excludes from disclosure under the PDA "[p]ersonal information in any files maintained for students in public schools." The primary issues here are (1) whether a school bus surveillance videotape that a school district maintains solely for disciplinary purposes is exempt from disclosure under RCW 42.17.310(1)(a) of the PDA; and (2) if exempt, whether the trial court should have ordered

the District to redact personal student information from the tape and then disclose the redacted version. We address each issue in turn.

## I. PDA Standard of Review

¶12 Under the PDA, state and local agencies must disclose any requested public record, unless the record falls within a specific exemption. *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 250, 884 P.2d 592 (1994) (hereinafter *PAWS*). The PDA enables citizens to retain sovereignty over their government and to demand full access to information relating to their government's activities. RCW 42.17.010, .251.

¶13 The legislature directed that the PDA provisions be "liberally construed and its exemptions narrowly construed to promote this public policy." RCW 42.17.251. When the record consists of affidavits, memorandums of law, and other documentary evidence, we review PDA challenges de novo. *PAWS*, 125 Wn.2d at 252.

¶14 When interpreting a statute, our primary duty is to give effect to the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). "If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the Legislature intended." *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). Furthermore, we will not "add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003). Because we do not find the statute ambiguous, we apply its plain meaning as written by the legislature.

## II. RCW 42.17.310(1)(a)

¶15 The Lindemans contend that the trial court erred in concluding that RCW 42.17.310 (1)(a) (subsection (1)(a)) was broader than RCW 42.17.310 (1)(b) (subsection (1)(b)).

They assert that the same test applies to both subsections. They then argue that, under this test, the District was required to produce the school bus videotape unless it could demonstrate that the tape's contents violated the right to privacy as defined in RCW 42.17.255,[3] by showing that the tape "(1) would be highly offensive to a reasonable person and (2) is not of legitimate concern to the public." Br. of Appellants at 16. They further argue that under this test, the District must show that the videotape concerns the private lives of the other students involved and either contains facts the other students would not want exposed to the public eye or shows intimate details of their private lives. We disagree.

A. Plain Language—No "Right To Privacy" Requirement for Subsection (1)(a)

¶16 Subsection (1)(a) provides that "[*p*]*ersonal information* in any files maintained for students in public schools, patients or clients of public institutions or public health agencies, or welfare recipients" is exempt from disclosure under the PDA.[4] (Emphasis added.) But unlike several other subsections of the statute, subsection (1)(a) does not limit excluded "personal information" to information that violates a person's right to privacy. *Compare* RCW 42.17.310(1)(a) *with* RCW 42.17.310(1)(b), (c), and (d).[5] In

---

[3] RCW 42.17.255 provides:

A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public. The provisions of this chapter dealing with the right to privacy in certain public records do not create any right of privacy beyond those rights that are specified in this chapter as express exemptions from the public's right to inspect, examine, or copy public records.

[4] Although the Lindemans argued below that the tape was not information "in any files maintained for students in public schools," they do not raise this argument on appeal.

[5] These subsections state that the following information is exempt from the PDA:

(b) Personal information in files maintained for employees, appointees, or

our view, the Lindemans read subsection (1)(a) too narrowly.

¶17 For public disclosure purposes, the legislature has drawn an express distinction between clients of public institutions, such as public school students, and persons involved in running our public institutions, such as public employees and elected or appointed officials. For example, in subsection (1)(b), the legislature specifically excludes from public disclosure "[*p*]*ersonal information* in files maintained for employees, appointees, or elected officials of any public agency" *only "to the extent that disclosure would violate their right to privacy."* RCW 42.17.310(1)(b) (emphases added). In contrast, the legislature clearly excluded this limitation in subsection (1)(a). By omitting from subsection (1)(a) the last clause of subsection (1)(b), "to the extent that disclosure would violate their right to privacy," the legislature thus created broader protection from public disclosure for clients of government institutions, such as students.

¶18 If we did not read together these two subsections in this manner, then the right to privacy language in subsection (1)(b), and other subsections, would be superfluous, a result we avoid when interpreting a statute.[6] *See PAWS*, 125 Wn.2d at 260 ("We will not interpret statutes in a

---

elected officials of any public agency *to the extent that disclosure would violate their right to privacy.*

(c) Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would (i) be prohibited to such persons by RCW 84.08.210, 82.32.330, 84-.40.020, or 84.40.340 or (ii) *violate the taxpayer's right to privacy* or result in unfair competitive disadvantage to the taxpayer.

(d) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, *the nondisclosure of which is essential* to effective law enforcement or *for the protection of any person's right to privacy.*

RCW 42.17.310(b), (c), (d) (emphases added).

[6] Because the language in subsection (1)(a) is distinct from the other subsections and this language difference is determinative, the Lindemans' reliance on cases discussing other subsections is inapposite. *See Amren v. City of Kalama*, 131 Wn.2d 25, 929 P.2d 389 (1997) (not addressing any PDA exemptions under RCW 42.17.310(1)); *Dawson v. Daly*, 120 Wn.2d 782, 845 P.2d 995 (1993) (discussing

manner that renders portions of the statute superfluous.") (citing *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 829 P.2d 746 (1992), *cert denied*, 506 U.S. 1079 (1993)). We conclude, therefore, that the legislature's decision to modify the term "personal information" in subsection (1)(b), and to limit disclosure solely to information that would not violate government employees' personal privacy, demonstrates that it understood the phrase public clients' "personal information," *without modification*, to protect personal information beyond that which would implicate a person's right to privacy.

¶19 We further note that subsection (1)(a) reflects the legislature's decision to provide heightened protection to a specific, narrow class of persons distinct from those discussed in other PDA exemptions. Unlike the other PDA exemptions, subsection (1)(a) applies to information related to persons in public schools, patients and clients of public institutions or public health agencies, and welfare recipients. RCW 42.17.310(1)(a). Because of the nature of these agencies, their clients, and the services they provide, much of the personal information gathered in administering these programs relates to a *specific individual's typically confidential needs or evaluation* rather than to the general administration of government by those acting on behalf of our government.

¶20 As noted above, the PDA enables our citizens to retain sovereignty over our *government* and to demand full access to information relating to our *government's activities*, RCW 42.17.010, RCW 42.17.251. The PDA, however, was not intended to make it easier for the public to obtain personal information about individuals who have become subject to government action due to personal factors such as their age, health, or financial status. Such personal information generally has no bearing on how our government

---

RCW 42.17.310(1)(j)); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978) (discussing RCW 42.17.310(1)(i)); *Koenig v. City of Des Moines*, 123 Wn. App. 285, 95 P.3d 777 (2004) (discussing RCW 42.17.310(1)(e)), *review granted*, 153 Wn.2d 1023 (2005); *King County v. Sheehan*, 114 Wn. App. 325, 57 P.3d 307 (2002) (discussing RCW 42.17.310(1)(d)).

operates, absent some target investigation or data collection, for example, information compiled during an investigation into nursing home abuse.

B. Case law

¶21 Two cases, however, suggest that the personal information protected under subsection (1)(a) must relate to a person's privacy interests. In *Citizens For Fair Share v. Dep't of Corr.*, 117 Wn. App. 411, 429-35, 72 P.3d 206 (2003), *review denied,* 150 Wn.2d 1037 (2004), we examined RCW 42.17.310(1)(a) in the context of whether the Department of Corrections had properly responded to a PDA request for a variety of information about the location of sex offenders and sex offender treatment or correctional facilities. Before examining the individual requests, we stated:

> The PDA requires that, on request, state and local agencies "make available for public inspection and copying all public records," unless the record falls within a specific exemption. RCW 42.17.260(1); *Tacoma Pub. Library v. Woessner*, 90 Wn. App. 205, 212, 951 P.2d 357[, 972 P.2d 932] (1998). RCW 42.17.310(1)(a) exempts from public inspection and copying all "[p]ersonal information in any files maintained for . . . patients or clients of public institutions." This exemption, which protects individuals' "right to privacy," is violated if disclosing the record " '(1) [w]ould be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.' " [*PAWS*], 125 Wn.2d [at 254] (quoting RCW 42.17.255).

*Citizens*, 117 Wn. App. at 429-30 (footnotes omitted).

¶22 But we concluded that the "right to privacy" language applied to subsection (1)(a) without discussing the language differences among the various subsections. Additionally, we relied on *PAWS*, which mentions RCW 42.17.255 solely in the context of examining RCW 42.17.310(1)(b), a subsection that specifically refers to a person's right of privacy. *PAWS*, 125 Wn.2d at 254. Because the language differences between subsections (1)(a) and (b) suggest that a different test should apply and because we

did not reach this issue in *Citizens*, *Citizens* is not instructive here.

¶23 In *Oliver v. Harborview Medical Center*, 94 Wn.2d 559, 618 P.2d 76 (1980), a patient requested her hospital records under the PDA. The hospital argued that they were exempt under RCW 42.17.310(1)(a) and (i) and that disclosure of the records would "inhibit full professional statements about patients and render care less helpful." *Oliver*, 94 Wn.2d at 561. The trial court concluded that, as a matter of law, the patient's records were not public records under chapter 42.17 RCW and that all other matters were moot because the patient's appellate attorney had accepted the patient's personal medical records from the hospital. *Oliver*, 94 Wn.2d at 563. On appeal, the Supreme Court determined that the case was not moot because the hospital had provided the records under hospital policy and had not contended that the PDA did not apply. The court further held that the patient's records were "public records" for purposes of the PDA. *Oliver*, 94 Wn.2d at 564-66.

¶24 The court next addressed whether the records were exempt from disclosure under RCW 42.17.310(1)(a):

> Respondents [the hospital] contend that even if appellant's medical records fall within the purview of the [PDA], they are exempted from disclosure under RCW 42.17.310(1)(a). We do not agree.
>
> As indicated above, RCW 42.17.310(1)(a) exempts from public inspection "[p]ersonal information in any files maintained for . . . patients . . . of public institutions or public health agencies." RCW 42.17.310(2) and (3), however, render this exemption from disclosure inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought.

*Oliver*, 94 Wn.2d at 567.

¶25 The court then described RCW 42.17.310(2) and (3): It found that the hospital could have provided the patient with "cleansed" records but that the patient had not re-

quested such records. But, as in *Citizens*, the court did not discuss the effect of subsection (1)(a)'s broader language or its interaction with RCW 42.17.310(2) or (3). Because this is the key issue here, *Oliver* is not instructive.

¶26 Accordingly, we hold that subsection (1)(a) protects personal information generally and is not restricted to information that would violate a person's right to privacy, as in subsection (1)(b). The test the Lindemans propose is not appropriate because it is based on case law discussing subsection (1)(b) and RCW 42.17.255, which defines "right to privacy," and, as noted above, subsection (1)(a) does not require that the protected information relate to a person's right to privacy. Accordingly, based on the plain language of the statute and the nature of the information the legislature was trying to protect, we hold that the trial court did not err when it ruled that subsection (1)(a) is broader than subsection (1)(b) and refused to apply the standards the Lindemans proposed.

C. "Personal Information"

¶27 The Lindemans next argue that even if their proposed test does not apply, the tape is still not exempt from disclosure under the PDA because it does not contain "personal information." Citing *Webster's New International Dictionary* (2d ed. 1950), they assert that the term "personal" requires that the tape depict " 'peculiar or proper to private concerns; not public or general,' " and that because the tape shows acts that occurred in view of others, it contains "public" rather than "private" information and subsection (1)(a) does not apply.

¶28 The District argues that under the " 'usual and ordinary meaning' " of the term, as derived from the dictionary, the term "personal" clearly covers the tape. Relying on different portions of *Webster's* definition, the District argues that the tape is "personal" information because it (1) contains information relating to a specific individual and (2) relates to another student's potentially

offensive private matters because it records an apparent assault by that student against another student on the school bus. We agree with the District.

¶29 Generally, legislative definitions provided in a statute are controlling. But in the absence of a statutory definition, as is the case here, courts may give a term its plain and ordinary meaning by reference to a standard dictionary. *State v. Sullivan*, 143 Wn.2d 162, 174, 19 P.3d 1012 (2001). Nonetheless, we will avoid literal reading of a statute that would result in unlikely, absurd, or strained consequences. *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992). Moreover, we must interpret the statute in its entirety, reviewing all of its provisions in relation to each other and, as noted above, should avoid interpretations that make other parts of the statute superfluous. *In re Det. of Williams*, 147 Wn.2d 476, 490, 55 P.3d 597 (2002) (quoting *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 133, 814 P.2d 629 (1991)); *PAWS*, 125 Wn.2d at 260.

¶30 *Webster's* third edition contains all the definitions to which the parties refer. WEBSTER'S NEW INTERNATIONAL DICTIONARY 1686 (3d ed. 1969). The first definition defines "personal" as "of or relating to a particular person : affecting one individual or each of many individuals : peculiar or proper to private concerns : not public or general." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1686 (3d ed. 1969). The fourth definition defines the term as "relating to an individual, his character, conduct, motives, or private affairs esp. in an invidious and offensive manner." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1686 (3d ed 1969).

¶31 Based on these definitions, the simplest meaning of the term "personal" is "of or relating to a particular person." This relatively broad definition arguably conflicts with the directive to interpret the exemptions to the PDA narrowly. But it is also the most consistent with the statute as a whole because the subsections, other than (1)(a), specifically implicate a person's privacy interests whereas subsection (1)(a) does not. Rather, as discussed above, (1)(a) does not modify the phrase "personal information" in any manner,

suggesting that any and all personal information from agencies and institutions that fall under this subsection is exempt from public disclosure. Furthermore, were we to conclude otherwise and find that the phrase "personal information" implied "private information," the additional language in the other subsections would become superfluous, a result we must avoid. *See Williams*, 147 Wn.2d at 490; *PAWS*, 125 Wn.2d at 260.

¶32 Applying this definition, the videotape clearly contains "personal information" because it would show the identities of the students on the bus. Thus, to the extent the tape identifies the children on the bus and indicates that they are district students, it falls under subsection (1)(a). We hold, therefore, that the trial court did not err when it concluded that the tape was exempt from PDA disclosure.

## III. Redaction

¶33 The Lindemans next argue that the trial court erred when it concluded that the District was not required to produce a redacted version of the tape. They contend that the trial court had evidence showing that redaction was feasible at a reasonable cost but that it did not consider this option. The District counters that because the tape is exempt under subsection (1)(a) and because subsection (1)(a) protects "personal information" rather than information that would violate "personal privacy," RCW 42.17.310(2) does not apply.[7]

---

[7] In its brief, the District relies on a Florida case, *WFTV, Inc. v. School Board of Seminole*, 874 So. 2d 48 (Fla. Dist. Ct. App.), *review denied*, 892 So. 2d 1015 (Fla. 2004), to support its argument that the tape is exempt from the PDA. But the parties in *WFTV* presumed that a videotape from a school bus was exempt from Florida's version of the PDA and the court addressed only whether the tape was also "confidential" under Florida law and, if so, whether the district was required to produce a redacted version of the tape. Accordingly, this case is not relevant to whether the tape here is exempt from disclosure under Washington's PDA.

Additionally, the only other case addressing RCW 42.17.310(2) in a context similar to the current case is *Oliver*. But, as previously discussed, the *Oliver* court did not address how subsection (1)(a)'s distinct language impacts the redaction requirements of RCW 42.17.310(2).

¶34 The trial court concluded: "The District is not required to edit the school bus surveillance video tape pursuant to RCW 42.17.3[1]0(2)[8] to allow the inspection and copying of information not exempt under the Public Disclosure Act, 42.17 RCW." Clerk's Papers at 92.

¶35 RCW 42.17.310(2) provides:

> Except for information described in subsection (1)(c)(i)[9] of this section and confidential income data exempted from public inspection pursuant to RCW 84.40.020, the exemptions of this section are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought. No exemption may be construed to permit the nondisclosure of statistical information not descriptive of any readily identifiable person or persons.

We agree with the District that even if it were possible to redact the tape, such redaction would obliterate audio and visual personal information such as students' faces, bodies, voices, clothing, and so forth, which would otherwise tend to reveal protected student identities. After such redaction, there would be no meaningful information remaining on the tape. Accordingly, we hold that the trial court's ruling was not error.

¶36 This result does not in any way contravene the public policy behind the PDA to allow access to public records so that our citizens can discover how our government operates. We reiterate that (1) the District's usual practice is to record over and reuse school bus surveillance videotapes every week; (2) the District retained this particular tape solely for disciplinary purposes relating to this particular incident; (3) such videotapes are not part of the District's generally kept records concerning administration

---

[8] The trial court's written conclusions refer to RCW 42.17.340(2) rather than RCW 42.17.310(2). RCW 42.17.340 addresses judicial review of agency actions and section (2) provides that the court may require an agency to prove that its time estimates are reasonable. Accordingly, this appears to be a scrivener's error and the court was actually referring to RCW 42.17.310.

[9] This subsection exempts certain taxpayer information.

of the school district; (4) nonetheless, the District has already allowed the Lindemans to view the tape and has not kept it secret from them; (5) the Lindemans are seeking the tape only under the PDA allowing disclosure of certain public records and not in connection with any tort action related to the school bus incident; and (6) aside from certain regularly kept school data collections, the law prohibits the School District from disclosing to the general public private, personal information about their individual students. RCW 42.17.310(1)(a).

## IV. Attorney Fees, Costs, and Penalties

¶37 Finally, the Lindemans argue that they are entitled to attorney fees, costs, and penalties under RCW 42.17.340, plus sanctions of $100 per day, asserting that the District's refusal to comply with the subpoena duces tecum, unless the Lindemans waived attorney fees and costs, is evidence of bad faith. We agree with the trial court that the Lindemans were not entitled to fees or costs under the PDA because the tape was not subject to PDA disclosure, intact or redacted. For the same reasons, the Lindemans are not entitled to attorney fees and costs on appeal.

¶38 Affirmed.

Armstrong and Van Deren, JJ., concur.

Review granted at 156 Wn.2d 1006 (2006).